1   **GAIL SHIFMAN**
    **ATTORNEY AT LAW**
2   **601 California Street**
    **Suite 1800**
3   **San Francisco, CA  94108**
    **Telephone:  (415) 551-1500**
4   **Facsimile:  (415) 551-1502**

5   **Attorney for Defendant**
    **ASIM WAQAR**
6

7

8

9                **IN THE UNITED STATES DISTRICT COURT**

10              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                         **OAKLAND DIVISION**

12

13  **UNITED STATES OF AMERICA,**          **Case No. CR 11-0464 PJH**

14              **Plaintiff,**            **DEFENDANT'S REQUEST TO CONTINUE**
                                          **SENTENCING DATE, OBJECTIONS TO**
15       **v.**                           **PRESENTENCE REPORT AND**
                                          **SENTENCING MEMORANDUM**
16
    **ASIM WAQAR,**
17

18              **Defendant.**

19

20                          <u>INTRODUCTION</u>

21
         Defendant, Asim Waqar, is before the Court having pled
22
    guilty to Counts One and Two of the Superseding Information
23
    charging conspiracy to commit wire fraud, in violation of 18
24
    U.S.C. §1349 (Count One) and tax evasion, in violation of 26
25
    U.S.C. §7201 (Count Two).  As with his co-defendant, Farid
26
    Rahman, the plea agreement contemplated a sentence at the low end
27

28

of U.S.S.G. level 20 as they together agreed, discussed and planned this offense. Both defendants have no criminal history. Mr. Rahman was sentenced on June 26, 2012 in the Eastern District of Michigan to 18 months custody, the Judge having considered the factors under 18 U.S.C. § 3553(a) and varying from the applicable sentencing guidelines. Rather than varying down from the guidelines in the limited manner recommended in the Presentence Report (PSR), applying the factors of 18 U.S.C. § 3553(a) to the particular circumstances of this case including proportionality and those described in more detail below, the Court should sentence Asim Waqar to the lowest possible term of imprisonment,[1] as the Court did for the co-defendant in this matter despite not paying the agreed upon restitution at sentencing.

<u>NEW SENTENCING DATE</u>

Additionally, and importantly, Defendant requests that the Court continue the sentencing date to permit a complete diagnosis of the medical condition that Mr. Waqar suffers from. On October 27, 2012, Defendant was admitted to the hospital having been found disoriented but alert with 5 empty over-the-counter cough syrup bottles next to him. Defendant has no memory of buying the

[1] The terms of the Plea Agreement require that Defendant request a sentence at the low end of level 20. The Court, however, under 18 U.S.C. 3553 may decide to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in 3553(a)(2)," namely, retribution, deterrence, incapacitation, and rehabilitation. See *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) that is lower than that contemplated in the Agreement. The Court is also required under 18 U.S.C. **Section 3553(a)(6) to** consider the need to avoid unwarranted disparity among defendants with similar records who have been found guilty of similar conduct.

cough syrup, drinking them or being found disoriented.  He had no
suicidal ideations (and has none now either).  His first memory
was in the second hospital where he was admitted after the
initial medical staff decided to '5150' Mr. Waqar to determine if
he was suffering from mental illness.  It was determined that he
does not suffer from mental illness but instead had suffered what
they believed to be a possible severe neurological episode.  He
was discharged with instructions to have follow up care and
testing.

With this background, the Court permitted Mr. Waqar to
return home to Ontario, Canada to seek medical testing, treatment
and diagnosis.  While in Ontario, he sought immediate medical
testing and remains under the care of doctors.  Attached is a
Sickness Certificate from Dr. Sajad Zalzala certifying that Mr.
Waqar is unfit for work or school.  Follow-up by counsel with Dr.
Zalzala revealed that Mr. Waqar suffered unusual neurological
episodes that continue and that he may suffer from Transient
Global Amnesia (TGA) which may be occurring because of strokes or
tumors.  Mr. Waqar is scheduled for an EEG on January 4, 2013 and
a MRI with a neurologist on January 31, 2013 as reflected on the
Certificate.  Dr. Zalzala strongly advised against Defendant's
travel though he will be at the January 2, 2013 hearing.

The Canadian health system is quite different than here in
America.  Mr. Waqar is able to obtain free health care; the

downside to this is that the system is slower than what we are familiar with here.  Though he has tried on numerous occasions to speed up the process, advance medical appointments and testing, he has been unsuccessful.  Dr. Zalzala has also tried albeit unsuccessfully to obtain earlier testing dates for Mr. Waqar.

It is essential that Mr. Waqar's medical condition be diagnosed and treated for his own health and safety and importantly, for purposes of this case that this information be (1) known by the Court prior to sentencing in that it may be a factor under § 3553(a)(1) regarding the Defendant's characteristics that the Court is required to consider before imposing sentence on the Defendant (2) included in the Defendant's PSR so that the Bureau of Prisons (BOP) can properly designate Mr. Waqar to an appropriate facility that can treat him, if necessary, upon understanding the nature of his illness or disease.  It is for these reasons, that Defendant requests that his sentencing date be continued until a reasonable time after his scheduled MRI on January 31, 2013 to permit the neurologist to diagnose his illness or disease.  While this matter has been pending for some time, Mr. Waqar's health is paramount to the imposition and service of a successful sentence and Defendant's life which it is hoped extends far beyond the service of any sentence.

In the event that the Court determines that sentencing

should proceed forward as scheduled, Defendant requests that he be permitted to return to Ontario, Canada on January 3, 2013 so that he can be tested as scheduled on January 4th and 31st returning to self-surrender to his designated facility on March 1, 2013.[2]

### THE PRESENTENCE REPORT

The Offense Conduct section of the PSR makes it seem that Mr. Waqar hatched this scheme on his own. Nothing could be further from the truth. Mr. Waqar has admitted to his conduct on numerous occasions including in interviews with his former employer and with the government. The offense conduct is more accurately depicted in the plea agreement which describes that together the co-defendant Farid Rahman ("Rahman"), a friend of Waqar's since college, and Waqar discussed a plan to defraud Kaiser Permanente, a healthcare company headquartered in Oakland, California, ("Kaiser"), by falsely reporting to Kaiser and the third party staffing companies used by Kaiser to pay contract employees, that Rahman's wife, Mina Kuhl ("Kuhl"), was a contract employee working for Kaiser under Waqar's supervision from her Michigan residence. Rahman and Waqar agreed that once Kuhl was hired by Kaiser, that Waqar would falsely report to Kaiser the hours worked by Kuhl, thereby causing her to receive payments by the staffing companies hired by Kaiser to handle the payroll for

---

[2] Defendant will file two forms of proposed orders for the Court's consideration, one continuing the sentencing date and permitting travel, the

Defendant's Request to Continue Sentencing Date, Objections to
PSR & Sentencing Memorandum                                        5

contract employees. Rahman's participation was essential for this fraud as was Waqar's. In fact, Kuhl directly received all the money ($1.5 million), and as agreed Rahman paid a portion ($428,000) of the money directly to Mr. Waqar's father's fledging business. Mr. Waqar's father had no knowledge of the source of the funds or their illegality and reported all of the funds received to Canadian tax authorities and paid taxes on those funds. Of this money paid out by Rahman, a small portion went directly to Waqar, who provided his in-laws with a loan (approximately $20,000, not repaid) and to make a small (less than $25,000) investment in a company that went bankrupt. Rahman and Kuhl ended up with the vast majority of the money. In essence, Waqar foolishly engaged in this fraud to first and foremost help his friend and secondly to help his family. He is extremely remorseful and ashamed at his conduct.

Defendant's family is now one member larger, having had a healthy baby boy on December 27, 2012 (PARAGRAPH 47). The PSRA should reflect that Defendant's wife Afifa Waqar applied for and was denied a Visa to visit the United States. This means that while Defendant is incarcerated in the United States he will not be able to be visited by his wife. Additionally, his parents are elderly and infirm making their travel to the U.S. difficult if not impossible for purposes of visitation. Thus, the service of imprisonment by the Defendant will cause more suffering than

usual because he will be serving the sentence without visitation from his family.  It is for this reason that Defendant seeks the permission of the Court to serve his sentence in Canada should government officials determine that a transfer is appropriate. Transfer of service of sentence is a process which occurs post-sentencing and is ultimately determined by Canadian and United States' officials following Defendant's surrender to serve his sentence in a BOP facility.  Defendant himself initiates the request once in the BOP facility.  There is no guarantee that the transfer will be granted and in fact they are often denied. Judicial permission is helpful (though not determinative) for transfer as is the non-objection of the prosecutor on the case.

The information in PARAGRAPH 49 regarding Physical Condition is not accurate and needs to be updated as indicated above.  All other factual information in the PSR is correct though Defendant takes issue with the contents of the Sentencing Recommendation.

### APPLICABLE SENTENCING LAW

The landmark decision in ***United States v. Booker***, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts.  ***Booker*** renders the Guidelines as advisory only, and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 U.S.C. § 3553(a).

In ***Nelson v. United States***,129 S. Ct. 890, 892, 172 L.Ed. 2d

719 (2009), perhaps as a reminder and definitely for emphasis,

the court stated:

> "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."

Indeed, in ***Irizarry v. United States***, 128 S.Ct. 2198, 2202, 171 L.Ed. 2d 28 (2008), the Court ruled that a variance from the sentencing Guideline range did not even require notice to the parties.

The Ninth Circuit was heard on the presumption of reasonableness and directed that even on appeal the presumption of a Guideline sentence may not be reasonable. It stated:

> ". . . A court of appeals may *not* presume that a non-Guidelines sentence is *un*reasonable. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit." ***United States v. Carty***, 520 F.3d 984, 993 (9th Cir. 2008).

The Guideline range is now simply the beginning of the sentencing analysis, not the end. The Ninth Circuit stated:

> "'The Guideline's factor may not be given more or less weight than any other.' So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the sentencing process,' the Guidelines range constitutes only a touch-stone in the district court's sentencing consideration." ***United States v. Autery***, 555 F.3d 864, 872 (9th Cir. 2009).

A formal determination of "departures," as required under a mandatory guideline system, may be both redundant or unnecessary, under a unitary determination of reasonableness of a sentence.[1] A

---

[1] "The system of downward departures that still guides the sentencing court's determination of the Guidelines-recommended range as required under § 3553(a)(4) does not preclude the court's discretion to consider other §

determination of an allowable departure under the pre-**Booker**

regime, however, may inform the court of the reasonableness of a

sentence. **United States v. Mohamed**, 459 F.3d 979, 986-87 (9th Cir.

2006). See, also, **United States v. Cantrell**, 433 F.3d 1269, 1279

(9th Cir. 2006) (the district court is to first calculate the

Guidelines accurately and then examine the sentence for

reasonableness in light of 18 U.S.C. § 3553(a)).

   The Court must now consider 18 U.S.C. § 3553(a) in its

entirety and impose a sentence "sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2)

of this subsection." The court, in determining the particular

sentence to be imposed, shall consider —

> (1)  The nature and circumstances of the offense and
>      the history and characteristics of the defendant;
>
> (2)  The need for the sentence imposed --
>
>      (a)  to reflect the seriousness of the offense, promote
>           respect for the law and provide just punishment
>           for the offense;
>
>      (b)  to afford adequate deterrence to criminal conduct;
>
>      (c)  to protect the public from further crimes of the
>           defendant; and
>
>      (d)  to provide the defendant with needed education or
>           vocational training, medical care or other
>           correctional treatment in the most effective
>           manner.

---

3553(a) factors. . . . Just because a consideration was improper under the
mandatory Guidelines regime does not mean that it is necessarily improper
under the advisory Guidelines regime." **United States v. Garcia**, 497 F.3d 964,
971-72 (9th Cir. 2007).

Defendant's Request to Continue Sentencing Date, Objections to
PSR & Sentencing Memorandum                                        9

In the past few years, the Supreme Court and every federal Circuit Court of Appeals have recognized that 18 U.S.C. § 3553(a) grants judges the discretion to consider co-defendant disparities at sentencing. The Supreme Court made it clear in *Gall v. United States,* 552 U.S. 38 (2007), that two separate aspects of the sentencing statute — §3553(a)(6) and § 3553(a)(2) — afford district judges this discretion. Section 3553(a)(6) directs the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Court further found in *United States v. Parker*, 462 F.3d 273, 278 that § 3553(a)(6) by its terms plainly applies where co-defendants are similarly situated.

In connection with another sentencing statute, 18 U.S.C. § 3661, the Supreme Court recently emphasized the importance of "[p]ermitting sentencing courts to consider the widest possible breadth of information about a defendant," and emphasized that "Congress could not have been clearer in directing that '[n]o limitation . . . be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.'" *United States v. Pepper,* 131 S. Ct. 1229, 1240, 1241 (2011) (quoting § 3661). Information

about a defendant's "conduct" surely includes information about how his culpability and role in the offense compare with those of his co-defendant.

The PSR in the Sentencing Recommendation is plainly in error when it states that "the Defendant (Waqar) was the catalyst in this scheme."  It is further in plain error when it states that Defendant Waqar "recruited" co-conspirators/defendants Rahman and Kuhl.  It is again in plain error when it states that Waqar "alone, had the capability of stopping this fraud."  It is also in error when it states that upon learning that Kuhl and Rahman had been arrested that he lived in Pakistan for a year.

Defendant Waqar's plea agreement and factual basis for the fraud is virtually identical to that of Defendant Rahman. The offense conduct guideline level in each agreement the same as well.  And, while Defendant Kuhl may have played a less culpable role than that of Rahman and Waqar, Rahman and Waqar were on equal footing in this fraudulent scheme.  Rahman had every opportunity to stop the fraud as did Waqar; both failed to do so. Waqar was not the catalyst but instead Rahman and Waqar were together in cahoots in devising this scheme; Waqar recruited no one. Defendant Waqar and Defendant Rahman agreed that Waqar would 'hire' Defendant Kuhl who would be paid though she did not perform any work.  Together, Waqar and Rahman were two links in the fence.  Both defendants had no criminal history.

1        Mr. Waqar is in fact in a more difficult position than Mr.

2   Rahman because he will be incarcerated in the U.S. without the

3   ability to have any family visitation. He clearly has a serious

4   medical issue that could very well worsen while in custody.[3]

5
6   These factors were not present for Defendant Rahman who received

7   a variance for a sentence of 18 months.

8        As the ten character reference letters attached detail, Mr.

9   Waqar's entire existence is his close family connection.  He

10  deeply loves his wife, children and parents.  He is a good

11  father, son and husband who made a grave mistake for which he is

12  remorseful and deeply ashamed.  He has learned his lesson and

13  will not ever commit another offense.

14
                              CONCLUSION
15
16       There are important reasons that impact the Court's

17  consideration of the applicable sentencing standards, statutes

18  and Constitutional requirements for continuing the sentencing in

19  this matter to permit the diagnosis and early treatment of

20  Defendant's medical condition and to allow the Court to be

21  sufficiently apprised of all the factors which the Court must

22  consider before sentencing him.
23
24       In the event that the Court denies Defendant's request to

25  continue the hearing, Defendant asks the Court to consider all of

26  the factors including his characteristics, unwarranted sentencing

27
28  [3] To sentence Defendant Waqar knowing that he is suffering from a potentially
    severe medical condition currently undiagnosed is cruel and unusual punishment

Defendant's Request to Continue Sentencing Date, Objections to
PSR & Sentencing Memorandum                                    12

disparity between similarly situated defendants, Defendant's remorse, and the hardship of a sentence of incarceration in the United States on Defendant in imposing sentence.

  He further requests that the Court permit him to serve his sentence in Canada upon through a transfer should the applicable governmental officials determine it is appropriate.  And, he requests the opportunity to voluntarily surrender directly to his designated institution and that he be permitted to travel back to Ontario, Canada on January 3, 2013 so that he may conclude his medical tests, evaluation, diagnosis and treatment.

Dated: January 2, 2013                  Respectfully submitted,


                                         /s/
                            _____
                            GAIL SHIFMAN
                            Attorney for Defendant

_____
not contemplated by the guidelines or the relevant sentencing statutes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28