MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

STEPHEN G. CORRIGAN (MABN 100560)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, CA 94612
   Telephone: (510) 637-3680
   Fax: (510) 637-3724
   E-Mail: stephen.corrigan@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>ASIM WAQAR,<br>    Defendant. | No. CR 11-00464 PJH<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Defendant Asim Waqar is scheduled to be sentenced on February 20, 2013, for his August 22, 2012 guilty pleas to the conspiracy to commit wire fraud and money laundering, entered pursuant to a written plea agreement (Agreement). The Agreement includes a Sentencing Guidelines' adjusted offense level 20. With a Criminal History Category I, Waqar's term of imprisonment range is 33 to 41 months. Based upon all relevant factors, the government recommends a sentence of 33 months, three years supervised release, restitution in the amount of $1,803,667 payable to Kaiser Permanente, and $142,530 payable to the U.S. Department of Treasury, and a $200 special assessment.

**PROCEDURAL BACKGROUND**

On July 8, 2011, an Information was filed in the Northern District of California charging Waqar and co-defendants Farid Rahman and Mina Kuhl with the conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. On November 3, 2011, Waqar, Rahman, and Kuhl were charged in a Superseding Information with conspiracy to commit wire fraud (Count One). Waqar was also charged in Count Two with tax evasion, in violation of 26 U.S.C. § 7201, and Rahman was charged in Count Three with tax evasion, separate from Count Two.

In December 2011, the charges against Rahman and Kuhl were transferred pursuant to Rule 20 to the Eastern District of Michigan, the area where Rahman and Kuhl resided. On March 1, 2012, Rahman pled guilty to Counts One and Three of the Superseding Information and Kuhl pled guilty to Count One. On June 26, 2012, Rahman was sentenced to 18 months in custody, 3 years of supervised release, and ordered to pay restitution in the amount of $1,803,677 to Kaiser Permanente, and $133,044 to the United States Treasury. Kuhl was sentenced the same day to custody for a year and a day, 2 years supervised release, and ordered to pay restitution in the amount as her husband, Rahman.

On August 22, 2012, Waqar entered guilty pleas to the two count Superseding Information pursuant to a written plea agreement.

**FACTS**

    **Scheme to Defraud**

In 2005, Waqar was employed by Kaiser Permanente (Kaiser) as a manager working out of Kaiser' headquarters in Oakland, California, when he convinced his college friend, co-defendant Farid Rahman and his wife, co-defendant Mina Kuhl, to join Waqar in a scheme to defraud Kaiser. The scheme involved Waqar encouraging Kaiser to hire Kuhl as a contract employee purportedly working in Michigan and supervised by Waqar. Kuhl would not be required to perform work and Waqar would ensure that Kuhl's work hours would be submitted on her behalf, the hours would be approved, and Kuhl would be paid. Waqar would control all aspects of the hiring and employment of, and payments to, Kuhl. Rahman and Kuhl were required to do little aside from sharing the ill-gotten gains with Waqar.

After Rahman and Kuhl agreed to join the scheme, Waqar directed Kuhl to submit an application to Kaiser. Thereafter he encouraged Kaiser managers to hire Kuhl. Once Kuhl was hired as a contract employee for 12 months, Waqar logged into the Kaiser computer system under Kuhl's name and password, falsely reporting the hours worked by Kuhl. When Kuhl's 12 month contract period neared an end, Waqar convinced Kaiser's management to extend the contract for another year, praising the work performed and the need for Kuhl's employment to continue.

During 2005 and 2006, Waqar submitted and approved payments to Kuhl for approximately 59 hours worked per week. In 2007, Waqar increased the hours to an average of more than 75 hours a week, and in 2008, an average of more than 78 hours a week. During a thirteen week period from September 15, 2007 thru December 15, 2007, Waqar reported and generated an extraordinary high number of hours, including seven consecutive weeks from September 15, 2007 to November 3, 2007 in which he billed Kaiser an average of 106 hours per week.

In May 2008, Kaiser Permanente management became suspicious of employee Mina Kuhl, an employee unknown to anyone at Kaiser beside Waqar, despite Kuhl having been employed by Kaiser since 2005, purportedly working an average of 70 hours a week. When questioned by Kaiser, Waqar repeatedly denied any criminal involvement but later when confronted with incriminating evidence, admitted that Kuhl was the wife of a college friend who had been hired by Waqar. Waqar was placed on administrative leave on August 21, 2008 and resigned from Kaiser on September 4, 2008.

The fraud scheme resulted in a loss of $1,803,667.84, the amount Kaiser paid to the contract vendors who then paid Kuhl $1,521,875 before deductions. Of the $1,019,299.64 Kuhl received after deductions, bank records reflect that Waqar received $428,300, all of which was deposited into Canadian bank accounts. Bank records reflect that approximately $335,000 was deposited into a business account held by Waqar and his parents, and a $40,000 check, dated December 21, 2008, made payable to Asim Waqar, was deposited into The Toronto Dominion Bank, Toronto, Canada. Additionally, Waqar directed Rahman and Kuhl to send to wire

UNITED STATES' SENTENCING MEMORANDUM
CR 11-00464 PJH                                               3

transfers in the amounts of $33,300 and $20,000 overseas.

**Tax Offense**

The $428,300 that Waqar received from Rahman and Kuhl during the years 2005, 2006, 2007, and 2008 was income upon which Waqar was required to pay federal and state taxes. Waqar failed to report the $428,000 on his federal income tax returns for 2005 ($100,000), 2006 ($53,300), 2007 ($170,000), and 2008 ($105,000), accruing a tax loss totaling $142,300.

**PLEA AGREEMENT**

The plea agreement calculates the applicable Sentencing Guidelines range based solely upon the fraud offense with no increase for the tax offense, although the parties note in the Agreement that the guilty pleas to the fraud offense and the tax offense do not group, and consequently the Guidelines may increase by one level pursuant to USSG §3D1.1.  Agreement, ¶ 7. Instead, the parties agreed that the Guidelines' fraud base offense is 7, increased 16 levels based upon a loss greater than $1,000,000, and reduced three levels for early acceptance of responsibility, resulting in an adjusted offense level 20.  Agreement ¶ 7(a) to (d).

The Agreement includes no upward adjustment for: (1) role in the offense (organizer, leader, manger, or supervisor), USSG §3B1.1(c), (2) sophisticated means, USSG §2B1.1(b)(10), or (3) an abuse of a position of trust. USSG §3B1.3.  Waqar agreed that the sentence of imprisonment within the range of offense level 20 was reasonable, and further agreed that "I will not seek a sentence of imprisonment below the low end of the Guidelines range." See Agreement at 6.

**PRESENTENCE INVESTIGATIVE REPORT (PSR)**

The adjusted offense level in the PSR is 21, one level higher than the adjusted offense level in the Agreement. PSR ¶ 38.   The difference is based upon the one level increase pursuant to USSG §3D1.4, because the fraud and tax offenses do not group. See PSR ¶ 33.  With an adjusted offense level 21 and a Criminal History Category I, the PSR concludes that Waqar's term of imprisonment range is 37 to 46 months.

The Probation Officer recommends a variance and a sentence of 30 months.  While pointing out that Waqar was the catalyst in the fraudulent scheme, taking advantage of his

employer Kaiser's failure to monitor their vendor contract employees, resulting in a loss greater than $1.8 million over a three year period, the Probation Officer recommends a reduced sentence in consideration of Waqar's young family and his financial responsibility to pay restitution to Kaiser and to the U.S. Treasury. See PSR at Sentencing Recommendation.

**GOVERNMENT'S RECOMMENDATION**

The government recommends a sentence of 33 months in custody, which is the low end of the Guidelines' calculations contained in the Agreement. This recommendations takes into account all relevant factors outlined in 18 U.S.C. § 3553(a), including the need for sentence to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Waqar's criminal conduct is noteworthy for a number of reasons. At the time that Waqar initiated the plan to defraud Kaiser, he held a well-paid management position with Kaiser. For no apparent reason aside from greed, Waqar abused his position of trust by enlisting the assistance of a friend and his wife to steal from Kaiser. Unlike his co-defendants, who did little other than share the ill-gotten gains with Waqar, Waqar was the driving force, intimate with the process by which Kaiser hired contract employees.

With an insider's knowledge of the oversight and review of the work performed and the payments made, Waqar created a scheme by which he could log into the Kaiser computer system as Kuhl, enter the hours she purportedly worked, log out and log back in as himself and approved the hours he had just submitted. Not satisfied with sharing in the profits derived from payments to Kuhl for the routine 40 hour week, over a four year period, Waqar submitted weekly work hours averaging 70 hours. Each time Kuhl's 12 month contract was scheduled to end, Waqar convinced Kaiser to extend the contract another year. When in 2008 Waqar was questioned about Kuhl's employment, he denied any wrongdoing until faced with overwhelming evidence.

The plea agreement was tailored to limit Waqar's exposure to a range of 33 to 41 months, in recognition of his early acceptance and the impact on his family. However, the offenses to which Waqar has pled guilty require a sentence of no less than 33 months, a sentence that Waqar has agreed is reasonable. Kaiser's loss of $1.8 million is no higher only because Kaiser

UNITED STATES' SENTENCING MEMORANDUM
CR 11-00464 PJH                          5

eventually discovered the scheme, not because of any actions taken by Waqar to stop stealing from Kaiser. Waqar's creation of, and active participation in, a four-year scheme to victimize his employer, his involvement of two others in the scheme, combined with his failure to pay taxes on the fraud profits, fully supports the government's recommended sentence.

**CONCLUSION**

For the reasons stated, the government recommends that the Court sentence defendant Asim Waqar to a term of imprisonment of 33 months, three years supervised release, restitution of $1,803,667 payable to Kaiser Permanente and $142,530 payable to the United States Treasury, and a special assessment of $200.

Respectfully submitted,

MELINDA HAAG
United States Attorney

Dated: January 9, 2013

/s/
STEPHEN G. CORRIGAN
Assistant United States Attorney